**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

In re:

LARRY BRUCE THACKER,

Debtor.
_______________________________________/

CASE NO.: 12-50370-KKS
CHAPTER: 7

JOHN E. VENN,

&

SE PROPERTY HOLDINGS, LLC,
A/K/A SE PROPERTY HOLDINGS OHIO, LLC,

Plaintiffs,

v.

ADV. PRO. NO.: 13-05019-KKS

LARRY BRUCE THACKER,

Defendant.
_______________________________________/

**ORDER GRANTING MOTION OF PLAINTIFF, SE PROPERTY HOLDINGS, LLC, FOR FINAL SUMMARY JUDGMENT (DOC. 63) AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 113)**

THIS MATTER is before the Court on cross-motions for summary judgment filed by Plaintiff, SE Property Holdings, LLC ("SEPH," the "SEPH Motion," Doc. 63), and Defendant, Larry Bruce Thacker (the "Defendant's Motion," Doc. 113). The Court heard argument on the SEPH motion on December 18, 2014.[1] Because the Defendant's Motion was filed the day of the hearing on the SEPH Motion, the Court did not hear argument on the Defendant's Motion, but rather took that motion under advisement on the papers.[2]

---

[1] Doc. 115; Doc. 120; Doc. 122.
[2] Doc. 147. The Defendant's Motion was originally scheduled for hearing on March 3, 2015.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(J).

PROCEDURAL HISTORY

The Defendant filed his Chapter 7 petition on July 30, 2012. SEPH filed the Complaint commencing this adversary proceeding seeking denial of the Defendant's discharge under 11 U.S.C. § 727(a)(2), (a)(4)(A) and (a)(5), as well as non-dischargeability of its debt pursuant to 11 U.S.C § 523(a)(2)(B) and (a)(4). After the Defendant filed an Answer and affirmative defenses, by agreement SEPH's adversary proceeding was consolidated with a similar adversary proceeding filed by the Chapter 7 Trustee.[3]

SEPH seeks summary judgment on Count I of the Complaint, in which SEPH alleges that the elements of 11 U.S.C. § 727(a)(2) have already been determined by a judgment entered by the state court finding that the Defendant concealed assets with the intent to hinder, delay, and defraud SEPH; and further alleges that the concealment continued within one year pre-petition, as well as post-petition. SEPH asks this Court to apply the state court's findings and conclusions in this case under the doctrine of collateral estoppel to deny the Defendant's discharge.[4]

The Defendant opposes the SEPH Motion and seeks summary judgment in his favor. He argues: 1) this Court should refrain from ruling on the SEPH Motion since the underlying state court judgment is subject to a pending appeal;[5] 2) collateral estoppel does not apply because he did not have counsel at the Order to Show Cause hearing and therefore the fraudulent transfer issue

[3] AP No. 13-05020, Doc. 17.
[4] Doc. 63, at 5-6.
[5] The Defendant appealed the denial of a motion to recuse the judge in the underlying state court action. The Florida Supreme Court has now denied the outstanding appeal. Doc. 142, at 3. The Defendant filed a second motion to recuse the state court judge. Doc. 143-1, at 1-13.

was not "actually litigated;" and 3) the SEPH Motion relies on disputed facts concerning his intent to hinder, delay, or defraud creditors.[6]

The Court entered an order on March 2, 2015, that required, among other things, the Defendant to provide specific record citations to the state court hearing transcripts filed in support of his opposition to the SEPH Motion.[7] The Defendant did not comply. The order also required the Defendant to file a statement of undisputed facts that addressed the allegations in his Motion for Summary Judgment, count by count.[8] The Defendant filed a statement of undisputed facts that did not comply with the Court's Order;[9] SEPH filed a response.[10]

## FACTUAL BACKGROUND

This adversary proceeding centers on a series of property transfers made by the Defendant and his wife, an attorney whose practice includes estate planning, during ongoing state court litigation, and on the Defendant's alleged continuing concealment of these transfers.[11]

In 2009, SEPH's predecessor in interest, Vision Bank, sued the Defendant in state court seeking a money judgment against him on account of debt totaling over $1.6 million in principal.[12] When he was sued, the Defendant owned substantial assets, including interests in entities that

[6] Doc. 73, at 2, 4, 7.
[7] Doc. 147.
[8] *Id.*
[9] Doc. 153. But the statement did not address his summary judgment motion count by count.
[10] Doc. 159. The Court has also considered the *Plaintiff SE Property Holdings, LLC's Motion for Judicial Notice* (Doc. 62), and Order granting same (Doc. 94); *Statement of Undisputed Facts in Support of Motion for Summary Judgment* (Doc. 64), *Defendants' [sic] Brief in Opposition to Motion for Summary Judgment by Plaintiff SE Property Holdings, LLC* (Doc. 73), *Defendant's Affidavits of Disputed Facts* (Doc. 110, 111, 112); the *Supplemental Brief in Opposition of Plaintiff SE Property Holdings, LLC's Motion for Summary Judgment* (Doc. 120), and *Plaintiff SE Property Holdings, LLC's Response to Thacker's Supplemental Brief in Opposition to Plaintiff's Motion for Summary Judgment* (Doc. 122). The Defendant did not file a statement of undisputed facts to accompany his Motion. SEPH then filed its *Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment* (Doc. 124) and its *Supplemental Opposition to Defendant's Motion for Summary Judgment* (Doc. 144).
[11] Doc. 62, Exhibit 5, at 2 [hereinafter "Order to Show Cause"]; Doc. 62, Exhibit 4, at 85.
[12] Doc. 62, Exhibit 2, at 2.

owned commercial and residential real estate, antique vehicles, and an airplane.[13] In 2010, Vision Bank filed a motion for partial summary judgment against the Defendant which was set for hearing on March 17, 2010.[14] Slightly more than one month prior to, and after being served with notice of, this hearing, on February 12, 2010 the Defendant and his wife transferred substantially all of the Defendant's assets into a newly-established trust: the Thacker Family Revocable Living Trust (the "Trust") but did not advise SEPH or Vision Bank of these transfers.[15] At the March 17 hearing, the state court ruled that it was granting partial summary judgment in favor of Vision Bank; this ruling resulted in a partial summary judgment for Vision bank and against the Defendant in the amount of over $1.9 million.[16]

In an effort to collect on the judgment, on August 31, 2011 SEPH filed a motion for proceedings supplementary; the state court took evidence and heard argument of counsel for the Defendant and SEPH on January 9 and March 2, 2012. The Defendant was represented by counsel and both he and his wife testified at these hearings.[17] Among other things, the Defendant's wife, Carlotta Appleman Thacker, testified that she and her husband [the Defendant] had control over the Trust assets and that the Defendant could take money out of the Trust.[18] As a result of the Defendant's and his wife's testimony, the state court entered an Order to Show Cause in which it ruled that SEPH had made a "prima facie" showing that the transfers into the Trust, whether directly through the Defendant or through him and his wife, were fraudulent, and found: (1) the

[13] Order to Show Cause, at 6-11.
[14] Order to Show Cause, at 2.
[15] *Id.* at 2-4. The Trust was set up by the Defendant and his attorney wife, effective as of February 12, 2010. The asset transfer was effected in part via a warranty deed prepared by the Debtor's then attorney, Jason Mosley, on February 19, 2010, and recorded on March 8, 2010. Doc. 62, Exhibit 1, at 1-2; Order to Show Cause, at 2; Doc. 110 at 5. Apparently, the Defendant and his wife had known each other for years but were married just after Vision bank sued the Defendant, and just in time to set up and transfer his assets into the Trust. Doc. 62, Exhibit 4, at 84; Doc. 110, at 5.
[16] Doc. 62, Exhibit 2, at 1-2; Order to Show Cause, at 2-11.
[17] Doc. 62, Exhibit 3, at 2; Doc. 62, Exhibit 4, at 3-4; Order to Show Cause, at 1-4; Doc. 110, at 8; Doc. 111, at 7.
[18] Doc. 62, Exhibit 4, at 85-86.

Defendant, as beneficiary and trustee of the Trust, retained "possession or control" of the property and assets after their transfers to the Trust; (2) the Defendant admitted that he and his wife maintained discretion and control over how the Trust assets would be managed, held, and distributed; and (3) that these facts, with others, established an intent to hinder, delay, and defraud creditors.[19] The Order to Show Cause required the Defendant and his wife to appear on May 29, 2012, and show cause why the Defendant's transfers of property to the Trust should not be avoided as fraudulent and applied in satisfaction of SEPH's outstanding judgment.[20]

The state court held the hearing on the Order to Show Cause, as scheduled, on May 29, 2012.[21] The Defendant and his wife appeared; their attorney apparently did not. The Debtor and his wife have claimed that their attorney had a medical emergency the morning of the hearing,[22] but have filed nothing with this Court or in the state courts that substantiates this claim.[23] Although the Defendant and his wife claim that state court judge "forced them" to proceed with the hearing on the Order to Show Cause,[24] they have been unable to direct this Court to any record that they made, or that the state court denied, a motion to continue. Neither the Defendant and his wife nor their state court lawyer ever filed a written request (even after the fact) for a continuance of that hearing, a motion for new trial or a motion for reconsideration.[25] At the hearing, the Defendant

[19] Order to Show Cause, at 2-4.
[20] *Id.* at 1-4. The Order to Show Cause was signed on March 14, 2012, and served on April 9, 2012. *Id.* at 5; Doc. 62, Exhibit 7, at 1 [hereinafter the "Fraudulent Transfer Judgment"].
[21] Doc. 62, Exhibit 6, at 2.
[22] Doc. 110, at 8-9; Doc. 111, at 8.
[23] The Defendant has not produced any pleading or affidavit, filed here or in any of the state trial and appellate courts, that confirms, in any way, this allegation. Neither he nor his wife nor their then state court lawyer have ever filed a motion for reconsideration or rehearing, or a request to vacate the Order to Show Cause, based on that lawyer's sworn testimony or other evidence of the facts that prevented the lawyer from attending the hearing on the Order to Show Cause.
[24] Doc. 110, at 9; Doc. 111, at 8.
[25] At one point during the hearing on the Order to Show Cause the state court informed the Defendant and his wife that the hearing was their "due process day." Doc. 62, Exhibit 6, at 18.

and his wife testified and presented evidence in defense of the allegations that the Defendant transferred his assets to the Trust with the intent to hinder, delay, or defraud his creditors.[26]

The state court entered a Judgment on Order to Show Cause (the "Fraudulent Transfer Judgment") on June 13, 2012.[27] The Fraudulent Transfer Judgment found that SEPH conclusively established that the Defendant retained discretion and control over the Trust assets post-transfer, and that this retention, along with other badges of fraud, conclusively demonstrated an intent to hinder, delay, and defraud SEPH.[28] In the Fraudulent Transfer Judgment, the state court also addressed the evidence presented by the Defendant and his wife at the Order to Show Cause hearing:

> The Court finds that the testimony offered at the Hearing is redundant of the testimony offered at the prior hearings on SE Property's Motion for Proceedings Supplementary. Mr. and Mrs. Thacker and the Trust failed to provide a sufficient basis to show cause why the transfers . . . should not be voided as fraudulent.[29]

The state court further found that "SE Property has established that Larry B. Thacker fraudulently, both through actual and constructive fraud, transferred each and every asset identified in Exhibit A [an attachment to the judgment] to the Trust."[30] The Fraudulent Transfer Judgment voided all of the transfers of property to the Trust, and declared the transfers to be deemed "null, void and of no effect against Larry B. Thacker, Carlotta Appleman Thacker, and the Trust."[31]

---

[26] Doc. 62, Exhibit 6, at 22-48.

[27] The full title of the state court pleading is *Judgment on Order to Show Cause Directed to Carlotta Appleman Thacker, Individually, and Larry B. Thacker and Carlotta Appleman, as Trustees for the Thacker Family Revocable Living Trust*. Fraudulent Transfer Judgment, at 1.

[28] *Id.* at 2 (referring to the findings in the Order to Show Cause).

[29] *Id.*

[30] *Id.* at 3. The Defendant urges that SEPH's Motion for Summary Judgment should be denied because he denies any fraudulent intent. Doc. 120, at 5. He uses his and his wife's self-serving affidavits as "evidence" that he had no fraudulent intent. As many bankruptcy courts have noted, never does a debtor faced with losing his discharge admit to having fraudulent intent.

[31] *Id.*

The Defendant appealed the Fraudulent Transfer Judgment and lost.[32] The Defendant later filed a motion to recuse the state court judge, which was denied, and the Defendant again appealed.[33] The Florida Supreme Court dismissed this appeal.[34]

The Defendant filed his Chapter 7 petition shortly after the state court entered the Fraudulent Transfer Judgment against him and within less than a year of the state court hearings and the Order to Show Cause.[35] In his Bankruptcy Schedules, the Defendant listed as his own many assets that he (and he and his wife) had transferred to the Trust pre-petition.[36] For example, the Defendant claimed a homestead exemption in 1806 Weakfish Way, Panama City, Florida, which was transferred to the Trust on February 19, 2010.[37] Since filing bankruptcy, and in spite of listing these properties as his own assets, the Defendant has maintained that the property transferred to the Trust is not property of the bankruptcy estate, and has prevented the Chapter 7 Trustee from liquidating those assets.[38] In the current proceeding, the Defendant has admitted that he is both a trustee and beneficiary of the Trust.[39]

## SUMMARY JUDGMENT STANDARD

Summary judgment is governed by Federal Rule of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056. A court may grant summary judgment where

---

[32] Doc. 62, Exhibit 8, at 3.
[33] Doc. 142.
[34] *Id.* at 3. On January 31, 2015, the Defendant filed a second motion to recuse the state court judge, asserting newly discovered facts. Doc. 143-1, at 1-13. The Record here does not disclose whether there has been a final ruling on the Defendant's second motion to recuse the state court trial judge. It appears, however, that the Defendant's allegations in this second motion to recuse the state court trial judge are false. *See* Doc. 145-1, at 75, 78-86.
[35] *In re Thacker*, No. 12-50370-KKS (Bankr. N.D. Fla. July 30, 2012), ECF No. 1 [hereinafter "Administrative Case"].
[36] *Compare* Order to Show Cause, at 6-11, *with* Administrative Case, Doc. 10, at 3-10.
[37] *Compare* Order to Show Cause, at 6, *with* Administrative Case, Doc. 100, at 3.
[38] *SE Property Holdings v. Thacker*, No. 13-05020 (Bankr. N.D. Fla. Dec. 2, 2013), ECF No. 1, at ¶ 25, and 4, at ¶ 25; *Venn v. Thacker*, No. 14-05006 (Bankr. N.D. Fla. Mar. 17, 2015), ECF No. 1, at ¶ 14, and 6, at ¶ 14.
[39] *SE Property Holdings v. Thacker*, No. 13-05020 (Bankr. N.D. Fla. Dec. 2, 2013), ECF No. 4, at ¶ 26.

"there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[40] The moving party has the burden of establishing the right to summary judgment.[41] Conclusory allegations by either party, without specific supporting facts, have no probative value.[42] Facts are material if they "might affect the outcome of the suit under the governing law" and disputes over material facts are genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[43] The facts "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."[44]

The undisputed facts show that the state court fully considered evidence relevant to, and conclusively determined, the issues necessary to prove denial of the Defendant's discharge under 11 U.S.C. § 727(a)(2). There are no remaining material issues of fact that might affect the outcome under applicable bankruptcy law.

## COLLATERAL ESTOPPEL

Under the doctrine of collateral estoppel, this Court can apply the factual findings of a prior adjudication from a state court—such as the findings in the state court Order to Show Cause and Fraudulent Transfer Judgment—to prevent continual litigation of identical facts and issues. Because the Fraudulent Transfer Judgment was rendered by a Florida court, this Court must apply the collateral estoppel law of Florida.[45] Collateral estoppel in Florida has four elements: "(1) the

---

[40] Fed. R. Civ. P. 56(c).

[41] *In re Pearlman*, 515 B.R. 887, 893 (Bankr. M.D. Fla. 2014) (citing *Fitzpatrick v. Schlitz* (*In re Schlitz*), 97 B.R. 671, 672 (Bankr. N.D. Ga. 1986)).

[42] *Id.* at 893 n.29 (citing *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)).

[43] *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (internal quotation marks omitted); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968))).

[44] *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56(c)); *see also In re Pearlman*, 515 B.R. at 893.

[45] *Figueroa v. Barreto (In re Barreto)*, 514 B.R. 702, 710-11 (Bankr. S.D. Fla. 2013).

parties are identical with those from the prior case, (2) the issues are identical, (3) there was a full and fair opportunity to litigate the issues and they were actually litigated, and (4) those issues were necessary to the prior adjudication."[46]

The Defendant does not argue that the parties to this proceeding differ from the parties in the state court, that the issues determined by the state court differ from the issues presented by SEPH's Complaint, or that the issues were necessary to the prior adjudication. Rather, the Defendant argues that because his attorney was not present at the Order to Show Cause hearing, he and his wife were denied a full and fair opportunity to litigate the issues, to the point that the issues were not "actually litigated."[47] This Court disagrees.

The undisputed facts show that the Defendant had a "full and fair opportunity" to litigate the issues before the state court that led to entry of the Fraudulent Transfer Judgment. The Defendant and his wife were fully represented at the two evidentiary hearings that preceded, and resulted in, the Order to Show Cause. It was as a result of the Defendant's and his wife's testimony at those hearings that the state court made its initial findings: that the transfers occurred; that the Defendant retained possession and control of the assets transferred; that the Defendant admitted that he did not receive any consideration for the transfers; that the Defendant was insolvent as of the date of the transfers; and that SEPH had made a *prima facia* showing that the transfers were actually and constructively fraudulent.[48]

The Defendant had numerous opportunities to rectify the fact that his attorney did not participate in the state court hearing on the Order to Show Cause: he could have filed a motion for a continuance, either before or after the hearing; he could have hired a new attorney; he could have

---

[46] *Agripost, LLC v. Miami-Dade County, Fla.*, 525 F.3d 1049, 1055 (11th Cir. 2008).
[47] Doc. 110, at 9; Doc. 111, at 8.
[48] Order to Show Cause, at 2-4.

filed a motion for rehearing, reconsideration, or a new trial.[49] Despite requests from this Court, the Defendant has failed to point to anything in the state court record showing that he did any of these things. Instead, the Defendant and his wife merely assert that the failure of their counsel to appear at the hearing on the Order to Show Cause deprived them of the ability or a fair opportunity to litigate their case.

None of the cases cited by the Defendant support his argument that his counsel's failure to attend the May 29, 2012 hearing, by itself, deprived him of a fair opportunity (as he puts it, "procedurally, substantively and evidentially") to litigate the fraudulent transfer issues in state court. One case, *Brown v. R.J. Reynolds Tobacco Co.*, held that the court could look beyond a jury verdict form from earlier litigation and examine the trial record as a whole to determine what factual issues the jury actually decided.[50] That is precisely what this Court has done: looked beyond the orders entered by the state court to the record that preceded them. Unlike in *Brown,* here there is no dispute over what the state court factfinder actually decided, or on what evidence its decision was based. In *Lozman v. City of Riviera Beach*, the issue was whether a judgment entered into by consent or stipulation was "fully litigated" for collateral estoppel purposes.[51] Once again, this case is inapposite because here there is no consent judgment or judgment by stipulation, nor is there any confusion as to what was actually litigated in the state court, as there was in *Lozman*. The

[49] At various times, the Defendant has represented that his lawyer did not show up for that hearing because he had been suspended from practice, or had gone in for an emergency liver transplant. Doc. 110, at ¶¶ 15-16; Doc. 111, at ¶¶ 12-13; Doc. 120, at 4; Doc. 145-1, at 74-75. Regardless of whether either of these reasons are true, the fact that neither the Defendant nor the lawyer who allegedly had an emergency liver transplant or who was sanctioned by the Florida Bar has ever filed any affidavits in support of these allegations of fact, is telling. Presumably, if a lawyer could not appear at a hearing on account of such a serious emergency medical condition, that lawyer or his firm or someone else would file proof of the medical emergency with the trial court in order to obtain a new hearing. No one ever filed any such thing with the trial court. All we have on this subject is the self-serving affidavit testimony of the Defendant and his wife.

[50] *Brown v. R.J. Reynolds Tobacco Co.*, 611 F.3d 1324, 1334-36 (11th Cir. 2010).

[51] *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1079-80 (11th Cir. 2013) (also addressing whether the issues in a state court eviction action were identical to the issues raised in a federal complaint).

courts in *Wolstein v. Docteroff*, *Bush v. Balfour Beatty Bahamas, Ltd.*, and *FDIC v. Daily* determined that default judgments, which are normally not afforded preclusive effect, were "actually litigated" for purposes of applying collateral estoppel. In those cases, the defendants had actively participated in the original proceedings, but ended up with default judgments against them as sanctions based on their recalcitrant and obstructive behavior. Based on those facts, the courts held that the defendants were estopped from rearguing the issues determined in the default judgments in subsequent bankruptcy dischargeability proceedings.[52] This case does not involve a default judgment, like in *Bush*, *Daily*, and *Docteroff*.

The Defendant has had his days in court. He and his wife testified and presented evidence at two hearings, with assistance of counsel. Then, they presented additional evidence and testimony at the Order to Show Cause hearing. Although the Defendant did not have an attorney present at this hearing, other than his wife, the state court found his and his wife's testimony to be "redundant" of their prior testimony: the facts were still the facts. The Defendant has had more than a "full and fair opportunity" to litigate the issues determined in the state court Fraudulent Transfer Judgment, and this Court can apply the state court findings to the allegations in this proceeding.

DENIAL OF DISCHARGE - 11 U.S.C. § 727(a)(2)

Under 11 U.S.C. § 727(a)(2), the Defendant's discharge should be denied if the evidence shows that he:

[52] *Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210, 214-17 (3d Cir. 1997); *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319, 1323-25 (11th Cir. 1995); *FDIC v. Daily (In re Daily)*, 47 F.3d 365, 368-70 (9th Cir. 1995).

> with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
> (A) property of the debtor, within one year before the date of the filing of the petition; or
>
> (B) property of the estate, after the date of the filing of the petition . . . .[53]

To prevail on its claim that the Defendant's discharge should be denied under this subsection, SEPH must prove that the Defendant (1) concealed property (2) with an intent to hinder, delay, or defraud a creditor (3) within one year of the petition date or after the petition date. SEPH has proven these elements, primarily based upon the evidence presented to, and rulings by, the state court.

There are two ways a party can prove that a debtor concealed assets: (1) by competent evidence that establishes a concealment that continues into the one-year look-back period or past the petition date; or (2) by proving that the debtor transferred title to the assets while retaining an interest in the property, thus affecting a sham transfer.[54] The state court explicitly found that the Defendant transferred title to the assets to the Trust and retained possession and control of the property transferred. The Order to Show Cause further found that the Defendant was a beneficiary and trustee of the Trust and retained discretion and control over the management and distribution

[THIS SPACE INTENTIONALLY LEFT BLANK]

---

[53] 11 U.S.C. § 727(a)(2) (2012).

[54] *Holland v. Sausser (In re Sausser)*, 159 B.R. 352, 356-57 (Bankr. M.D. Fla. 1993) (citing *In re Olivier*, 819 F.2d 550 (5th Cir. 1987)) (holding debtor that transferred ownership of his boat to his father more than one year pre-petition, but retained possession and use of boat, concealed property within the one year timeframe of § 727(a)(2)(A)); *see also Thibodeaux v. Olivier (In re Olivier)*, 819 F.2d 550 (5th Cir. 1987) ("Concealing property for purposes of section 727(a)(2)(A) can be accomplished by a transfer of title coupled with the retention of the benefits of ownership.").

of the Trust assets.[55] The Defendant is thus precluded from arguing that he did not conceal his property through the date of the last state court hearing.[56]

SEPH relies on the doctrine of continuing concealment to show that the Defendant concealed his property within one year of the petition date such that his discharge should be denied under 727(a)(2)(A). Because the transfers to the Trust occurred more than a year before the Defendant filed his Chapter 7 petition, the question becomes whether the undisputed material facts prove the defendant's concealment continued to within a year pre-petition. Where the objectionable transfer occurred more than one year before bankruptcy, continuing concealment can still provide a basis for denial of discharge.[57] "The doctrine of continuing concealment provides for situations . . . in which a debtor has kept his assets out of a creditor's reach during the look-back period by means of a sham ownership arrangement established more than one year before the bankruptcy petition was filed."[58]

---

[55] These facts distinguish *Rosen v. Bezner*, 996 F.2d 1527 (3d Cir. 1993). That case held that the fact that a bankruptcy debtor continued to live on property transferred to his wife for no consideration provided evidence of a "secret interest" retained by a bankruptcy debtor, but that fact alone did not prove that the debtor concealed property from creditors. The court focused on whether the debtor "retained some secret interest in the property." *Id.* at 1532. In this case, the state court found that the Defendant was a beneficiary and trustee of the Trust, so the Defendant retained a secret interest in the property transferred. *See Jeffrey M. Goldberg & Assocs., Ltd. v. Holstein (In re Holstein)*, 299 B.R. 211, 229 n.21 (Bankr. N.D. Ill. 2003).

[56] The Defendant is also precluded from arguing that he lacked an intent to hinder, delay, or defraud SEPH. The state court specifically found in both the Order to Show Cause and the resulting Fraudulent Transfer Judgment that the Defendant's retention and control of the Trust property post-transfer, among other indicia of fraud, conclusively demonstrated an intent to hinder, delay, and defraud SEPH. *See Holstein*, 299 B.R. at 229-30 (finding badges of fraud, including retention of property that was transferred, in state court judgment precluded a defendant from arguing that he lacked the intent necessary to deny a discharge under § 727(a)(2)).

[57] *Wieland v. Gordon (In re Gordon)*, 526 B.R. 376, 388-89 (B.A.P. 10th Cir. 2015); *see also Flushing Savings Bank, FSB v. Vidro (In re Vidro)*, 497 B.R. 678, 687 (Bankr. E.D.N.Y. 2013); *Holstein*, 299 B.R. at 231 (finding continuing concealment with the requisite intent where defendant to dischargeability action asserted less than one year before filing his bankruptcy petition that he had transferred his property to another person); *Bennett v. Hollingswoth (In re Hollingsworth)*, 224 B.R. 822, 829 (Bankr. M.D. Fla. 1998) ("The concealment of an interest in an asset that continues into the year before bankruptcy constitutes a form of concealment that occurs within the year before bankruptcy."); *FDIC v. Sullivan*, 204 B.R. 919, 939 (N.D. Tex. 1997) ("The effect of the doctrine of continuing concealment is to extend the reach of § 727(a)(2)(A) to transfers that occurred more than a year before bankruptcy.").

[58] *Coady v. D.A.N. Joint Venture III, L.P. (In re Coady)*, 588 F.3d 1312, 1316 (11th Cir. 2009) ("To allow a debtor to reap the rewards of his continuing efforts to evade creditors because they learned before the look-back period of the property on which they could not levy execution would rob the continuing concealment doctrine of its force."); *see also R.I. Depositors Econ. Prot. Corp. v. Hayes (In re Hayes)*, 229 B.R. 253, 261 (B.A.P. 1st Cir. 1999) (holding

In this case, the evidence is overwhelming that the Defendant has maintained the charade that the assets transferred into the Trust were not his property; certainly within the one year pre-petition. The state court entered the Fraudulent Transfer Judgment less than two months before the Defendant filed for bankruptcy. The Defendant's wife testified on March 2, 2012—less than five months before the Defendant filed his bankruptcy petition—that the Defendant had control over the Trust assets and could withdraw money from the Trust. The evidence also shows that the Defendant has continued to maintain this charade post-petition, including throughout this litigation. Among other things, the record is clear that the Defendant has attempted to prevent every effort by the Chapter 7 Trustee to liquidate the assets transferred, even though he listed those assets as his own in his bankruptcy schedules.

The Defendant has not offered any evidence or argument that he did not control the Trust assets or retain the benefits of the Trust assets during the applicable time period. In fact, his representations show just the opposite.

## CONCLUSION

The Defendant had a full and fair opportunity to litigate in state court. The Fraudulent Transfer Judgment was based on the evidence, including the Defendant's and his wife's testimony. That evidence, presented over three separate days, caused the state court to determine that the Defendant transferred his assets into the Trust with the intent to hinder, delay and defraud SEPH, that he had concealed the transfers, and that the concealment had continued at least through March 2, 2012, which was within one year of the date he filed his bankruptcy petition. The evidence also shows that this concealment continued after the Defendant filed bankruptcy.

---

creditor's knowledge of transfer prior to before the one-year look-back period does not defeat a § 727(a)(2)(A) objection to discharge).

Having carefully and fully considered all of the material evidence, including the Defendant's and his wife's affidavits, memoranda and other pleadings filed in support of and in opposition to the parties' respective motions for summary judgment, for the reasons stated, it is

ORDERED:

1. The Motion of Plaintiff, SE Property Holdings, LLC, for Final Summary Judgment (Doc. 63) is GRANTED.
2. The Defendant's Motion for Summary Judgment (Doc. 113) is DENIED.
3. The Court will enter a separate Final Summary Judgment for Plaintiff denying the Defendant's discharge pursuant to 11 U.S.C. § 727(a)(2) consistent with this Order.

DONE AND ORDERED in Tallahassee, Florida, this 22nd day of April, 2015.

KAREN K. SPECIE
United States Bankruptcy Judge

cc: All interested parties